October 2, 2023

**<u>Strictly Confidential</u>**

Loyd Preston Jr.
CEO
A1 Group, Inc.
15169 North Scottsdale Road
Scottsdale, AZ 85254

Joel Natario
19039 North 90th Lane
Peoria, AZ 85382

Subject: Deal Point Memorandum

Dear Mr. Loyd Preston and Mr. Natario

The purpose of this Memorandum Of Understanding ("MOU") is to set forth the basic terms and conditions according to which Clean Bottling Inc. ("CB and/or Purchaser"), will enter into an asset purchase agreement with A1 Group, Inc, Mr. Loyd Preston, Mr. Joel Natario Jr Individually ("Seller") (Collectively the Company), Both CB and the Company collectively noted in this MOU as ( "The Party" or "The Parties").

This binding agreement outlines the preliminary terms of the Acquisition and the transactions contemplated herein. This MOU is intended to serve as an outline of the proposed principal terms and conditions regarding the Acquisition and is subject to the execution and closing of a definitive agreement ("Definitive Agreement") between CB and the Company. The Parties recognize that there are other terms and conditions that have yet to be addressed, but the Parties agree to work together in good faith to address these issues and to complete a Definitive Agreement that is acceptable to both Parties as quickly as is practicable.

1. **<u>Acquisition</u>** CB has intentions to purchase the licensing agreement between A1 Group, Inc. and Alkaline88 Water Company, Inc. (the "LICENSE AGREEMENT") CB will purchase the LICENSING AGREEMENT for a total cost of five hundred US Dollars ($500,000.00).

2. **<u>Closing</u>** The Parties will use their best efforts to close the Acquisition contemplated herein as reasonably possible days following the execution of this MOU ("Closing").

3. **<u>Due Diligence</u>** CB shall conduct a business, financial, and legal due diligence investigation of the Company and the validity of the LICENSE AGREEMENT. To expedite this review, each Party agrees to make such information as reasonably requested by the other Party ("Due Diligence Information") available to the requesting Party.

4. **<u>Additional Closing Conditions</u>** The obligations of CB to complete the Acquisition are subject to satisfaction by the Company of the following conditions precedent (unless waived in writing by CB)

5. **<u>Confidentiality</u>** This MOU is being delivered with the understanding that the Company, together

with their respective officers, directors, managers, members, representatives, agents, owners, and employees, each agree to use their best efforts to keep the existence of this MOU and its contents confidential. Any information, including but not limited to data, business information (including customer lists and prospects), technical information, computer programs and documentation, programs, files, specifications, drawings, sketches, models, samples, tools or other data, oral, written or otherwise, (hereinafter called "Information"), furnished or disclosed by one party to the other for the contemplated transaction herein, will remain the disclosing party's property until the closing of the Acquisition, at which time all such Information will become the property of CB. All copies of such information in written, graphic, or other tangible forms must be returned to the disclosing party immediately upon written request if the transaction contemplated herein is not consummated. Unless such information was previously known to receiving party free of any obligation to keep it confidential or has been or is subsequently made public by the disclosing party or a third party, it must be kept confidential by the receiving party, will be used only in performing due diligence for the Acquisition, and may not be used for other purposes except upon such terms as may be agreed upon between CB and the Company in writing.

6. **Expenses** CB and the Company shall each be responsible for their fees and expenses incurred as part of the Acquisition and the transactions contemplated under this Agreement, including but not limited to, legal fees, accounting fees, investment banking fees, and related expenses.

7. **Announcements** No announcement shall be made regarding a pending or completed transaction or agreement between the parties without the prior written consent of both CB and the Company.

8. **Exclusivity** In consideration hereof and of the time and resources that CB will devote to the Acquisition and the Definitive Agreement, and the various investigations and reviews undertaken by CB, the Company, its subsidiaries and each of their respective affiliates, directors, officers, employees, representatives and agents will not, directly or indirectly, solicit, initiate, enter into or continue any discussions or transactions with, or encourage, or provide any information to any person or entity with respect to any proposal pursuant to which the Company or any of the Subsidiaries.

9. **Non-Binding** Except for paragraphs 6, 7, 8, and 9 of this MOU (which are legally binding upon execution of this MOU), this MOU is a statement of mutual intention; it is not intended to be legally binding and does not constitute a binding contractual commitment with respect to the transaction. Without limiting the foregoing, the failure of CB and the Company to reach an agreement on the terms and conditions being included in the Definitive Agreement and other agreements referred to herein shall not be construed as a breach of this MOU by any party hereto provided that the provisions of the four immediately preceding paragraphs are not breached. A legally binding obligation with respect to the transaction contemplated hereby will arise only upon execution and delivery of the Definitive Agreement and other agreements referred to herein by the parties thereto, subject to the conditions expressed therein.

10. **Governing Law Dispute Resolution and Jurisdiction** This MOU shall be governed by and construed in accordance with the laws of the State of Arizona, without giving effect to the conflicts of laws principles thereof. All disputes, controversies, or claims ("Disputes") arising out of or relating to this MOU shall in the first instance be the subject of a meeting between a representative of each Party who has decision-making authority with respect to the matter in question. Should the meeting either not take place or not result in a resolution of the dispute within twenty (20) business days following notice of the dispute to the other Party, then the dispute shall be resolved in a court of law to be held in Phoenix, Arizona.

11. **Multiple Counterparts**  This MOU may be executed in multiple counterparts, each of which may be deemed an original. It shall not be necessary that each Party executes each counterpart, or that any one counterpart be executed by more than one Party so long as each Party executes at least one counterpart.

If the terms and conditions of this MOU are acceptable, kindly execute a copy hereof where indicated below and return it to us on or before 12:00 p.m. Pacific Standard Time on Monday, October 2, 2032. This MOU shall be non-binding except as specifically set forth herein and is subject to the negotiation and execution of the Definitive Agreement and collateral documents referred to above.

Very Truly Yours,

*[DocuSigned signature: SA hva — D600376M791A466]*

Steven Delaportas
For Clean Bottling Inc.

ACCEPTED AND AGREED to

this _____ day of\_\_\_\_10/2/2023_____, _____

*[DocuSigned signature: Lloyd Preston Jr. — DBB367C3D571468]*

Loyd Preston Jr.
A1 Group, Inc.

*[DocuSigned signature: JOEL NATARIO — A3601E5244CE4CC]*

Joel Natario

3